```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                                             :
LUDWIG CRISS ZELAYA-ROMERO,                                  :
                              Petitioner,                    :
                                                             :          15 Crim. 174 (LGS)
                    -against-                                :          22 Civ. 1853 (LGS)
                                                             :
UNITED STATES OF AMERICA,                                    :          OPINION AND ORDER
                              Respondent.                    :
------------------------------------------------------------ X
```

LORNA G. SCHOFIELD, District Judge:

Pro se petitioner Ludwig Criss Zelaya-Romero brings this § 2255 petition (the "Petition") to vacate, set aside or correct his sentence for violating 21 U.S.C. § 963 and 18 U.S.C. § 924(o) following a guilty plea. *See* 28 U.S.C. § 2255. Petitioner asserts that he received ineffective assistance of counsel. For the reasons below, the Petition is denied.

I.     BACKGROUND

Petitioner was a member of the Honduran National Police. Prior to his arrest, Petitioner used his position to assist the "Cachiros," a violent drug trafficking organization, in its distribution of large quantities of cocaine from South America to the United States through Honduras. The Government indicted Petitioner on June 29, 2016, and Honduras extradited him to the United States on December 14, 2016.

On April 16, 2018, Petitioner pleaded guilty to (1) one count of participating in a conspiracy to import cocaine into the United States between 2004 and approximately June 2014 in violation of 21 U.S.C. § 963 and (2) one count of participating in a conspiracy to use and carry firearms in relation to a drug trafficking conspiracy in violation of 18 U.S.C. § 924(o). Petitioner was represented by his attorney.

1

Petitioner was sentenced on May 10, 2021.  The parties agreed, and the Court calculated, that under the United States Sentencing Guidelines ("Guidelines"), Petitioner's offense level was thirty-eight and his criminal history category was I, which resulted in a recommended sentencing range of 235 to 293 months.  At the sentencing hearing, Petitioner confirmed that he had had an opportunity to review the presentence report with his counsel.  Petitioner's counsel addressed several mitigating factors at sentencing, including that Petitioner turned himself in and confessed, struggles with mental and physical health problems, may experience violence in prison due to being a former police officer and will be deported after release.  Petitioner himself also described mitigating factors at the sentencing hearing.  The Probation Department recommended a Guidelines sentence of 235 months and no fine, and the Government sought a Guidelines sentence of at least 235 months and a $5 million fine.  Petitioner's counsel requested a below-Guidelines sentence of eighty-four months and no fine.  Petitioner was sentenced to 144 months in prison, which was a downward variance of ninety-one months from the low end of the Guidelines recommendation.

The variance was based in part on the mitigating factors presented by Petitioner's counsel.  The Court told Petitioner, "I wish you to know that you have a very good lawyer.  He's made many submissions on your behalf, and he told me all of the things that you have told me and much more . . . ."  The Court recounted the nature and circumstances of Petitioner's offense, namely that he had used his law enforcement position to further the drug trafficking activities of the Cachiros, that he had recruited and trained others to participate in the conspiracy, that he was responsible for distributing hundreds of kilograms of cocaine intended for the U.S. and that he had participated in murders and attempted murders on behalf of the Cachiros, including killing one person himself.  The Court also recounted the harsh conditions of Petitioner's confinement

prior to sentencing, particularly during the January 2019 blackout at the Metropolitan Detention Center and during the pandemic, during which Petitioner had contracted COVID-19.  The Court recounted information about Petitioner's family and his difficult upbringing, his efforts at rehabilitation while incarcerated and his physical and mental health struggles, including his purportedly impaired decision-making at the time of the crimes.  The Court also considered the sentences of Petitioner's co-defendants and how their involvement and circumstances compared to his.

On May 17, 2021, Petitioner appealed his sentence but later moved to withdraw the appeal.  That motion was granted on December 17, 2021.  Petitioner first filed a petition pursuant to § 2255 on March 1, 2022.  After the Government filed its opposition, Petitioner's motion for leave to file an amended § 2255 petition was granted.  Petitioner filed the instant Petition on September 13, 2022.

Petitioner seeks relief under § 2255 on the ground that, had his counsel requested a departure or further variance based on Petitioner's non-citizen status, Petitioner would have received a "two-level downward variance" in his offense level.  Petitioner argues that his offense level thus should have been thirty-six and his sentencing range 188 to 235 months, such that after applying the same ninety-one-month variance, his sentence would have been ninety-seven months instead of 144.  Petitioner bases his argument on *United States v. Smith*, 27 F.3d 649 (D.C. Cir. 1994), which held "that a downward departure [from the Guidelines range] may be appropriate where the defendant's status as a deportable alien is likely to cause a fortuitous increase in the severity of his sentence."  *Id.* at 655.

## II. LEGAL STANDARD

A federally incarcerated individual may move to vacate, set aside or correct his sentence on four grounds pursuant to § 2255:

> (1) that the sentence was imposed in violation of the Constitution or laws of the United States, or (2) that the court was without jurisdiction to impose such sentence, or (3) that the sentence was in excess of the maximum authorized by law, or (4) is otherwise subject to collateral attack.

*United States v. Hoskins*, 905 F.3d 97, 102 (2d Cir. 2018) (cleaned up) (quoting 28 U.S.C. § 2255(a)). "In ruling on a motion under § 2255, the district court is required to hold a hearing 'unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief.'" *Gonzalez v. United States*, 722 F.3d 118, 130 (2d Cir. 2013) (quoting 28 U.S.C. § 2255(b)); *accord Gobern v. United States*, No. 18 Civ. 12411, 2020 WL 6487965, at *2 (S.D.N.Y. Nov. 4, 2020). "To warrant a hearing, the motion must set forth specific facts supported by competent evidence, raising detailed and controverted issues of fact that, if proved at a hearing, would entitle [the petitioner] to relief." *Gonzalez*, 722 F.3d at 131.

The Sixth Amendment provides "the right to the effective assistance of counsel." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). "There is 'a strong presumption that counsel's conduct fell within the wide range of professional assistance.'" *Weingarten v. United States*, 865 F.3d 48, 52 (2d Cir. 2017) (quoting *Lynch v. Dolce*, 789 F.3d 303, 311 (2d Cir. 2015), in turn quoting *Strickland*, 466 U.S. at 689). "To overcome that presumption, a petitioner must establish two elements. First, the petitioner must show that counsel's performance was deficient by demonstrating that the representation 'fell below an objective standard of reasonableness.'" *Weingarten*, 865 F.3d at 52 (quoting *Strickland*, 466 U.S. at 688). "Second, the petitioner must show that counsel's deficient representation was prejudicial to the defense by establishing 'that there is a reasonable probability that, but for counsel's unprofessional errors,

4

the result of the proceeding would have been different.'" *Id.* (quoting *Strickland*, 466 U.S. at 694). "[A]n ineffective-assistance-of-counsel claim may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal." *Massaro v. United States*, 538 U.S. 500, 504 (2003).

Courts must liberally construe pleadings and briefs submitted by pro se litigants, reading such submissions "to raise the strongest claims [they] suggest[.]" *Hardaway v. Hartford Pub. Works Dep't*, 879 F.3d 486, 489 (2d Cir. 2018) (internal quotations marks omitted). Nevertheless, a pro se litigant is not exempt "from compliance with relevant rules of procedural and substantive law." *Tragath v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983); *accord Murphy v. Warden of Attica Corr. Facility*, No. 20 Civ. 3076, 2020 WL 2521461, at *1 (S.D.N.Y. May 15, 2020).

### III. DISCUSSION

Construing Petitioner's pro se submissions liberally to raise the strongest arguments they suggest, Petitioner argues that his counsel was ineffective in failing to investigate and request a departure or further variance based on collateral consequences of Petitioner's status as a deportable non-citizen, and in failing to argue that the extradition order issued by the Honduras Supreme Court precluded his prosecution for any events prior to 2014. For the reasons below, each of these arguments is unpersuasive.

#### A. Collateral Consequences of Deportable Non-Citizen Status at Sentencing

The Petition claims the collateral consequences of his deportable non-citizen status include his ineligibility for benefits under programs established under four sources of authority: 18 U.S.C. § 3624(c), the CARES Act of 2020, the First Step Act of 2018 and the Resident Drug Abuse Treatment Program ("RDAP"). The Petition also claims that Petitioner's counsel should

have raised the fact that certain Trump administration policies meant Petitioner would spend more time in private prisons under worse conditions, and that his counsel should have raised the general issue of racism in the criminal justice system, which "insur[es] that deportable aliens spend more time in prison compared to their equally situated American counterparts . . . [in violation of] the equal protection clause." To the extent Petitioner argues that his counsel should have sought a departure, his claim fails on both prongs of the *Strickland* analysis. To the extent Petitioner argues that his counsel should have sought a further variance, his claim fails because his counsel's performance was not deficient where he raised some but not all possible arguments for a variance, particularly since the arguments counsel made were successful and Petitioner's argument here is relatively weak.

  1. **Departure**

The performance of Petitioner's counsel was not deficient when he did not seek a departure from the Guidelines based on the collateral consequences of Petitioner's citizenship status. Any such application would have been unsuccessful, and there was no reasonable probability that the outcome would have changed. Petitioner's argument of ineffective assistance based on his counsel's failure to seek a departure fails on both *Strickland* prongs.

  a. **Legal Basis for a Departure**

Grounds for departure are set forth in the federal Guidelines Manual. *See* United States Sentencing Commission, Guidelines Manual, § 5K (Nov. 2016) (effective through October 31, 2018). The departure Petitioner requests is not specified in the Guidelines. *See* U.S.S.G. § 5K. However, the departure still may be permissible if it is based on circumstances not considered by the Guidelines. *See* U.S.S.G. § 1A.4(b), p.s.

Petitioner's request is largely based on *Smith*, in which the D.C. Circuit concluded that the prospect that a defendant would experience more severe conditions of confinement on account of his non-citizen status can be considered in departing from the Guidelines. *See* 27 F.3d at 649-55. The court said that departures should be "highly infrequent" and would be appropriate only if the "greater severity" is "undeserved." *Id*. at 655.

The law in the Second Circuit under *United States v. Restrepo*, 999 F.2d 640 (2d Cir. 1993), is similar to that in *Smith*. The court in *Restrepo* said a departure based on collateral consequences of non-citizen status, if permissible, must be based on "extraordinary" circumstances that were not considered by the Sentencing Commission. *Id.* at 640, 647; *accord Avila Pichardo v. United States*, No. 14 Crim. 389, 2019 WL 2210765, at *4 (E.D.N.Y. May 22, 2019) ("[W]hile the Circuit Court has stated that a defendant's status as a deportable alien may serve as a basis for a downward departure, such a departure i[s] appropriate only in cases that are 'extraordinary in nature and degree' and the departure is 'based on a factor not considered, in kind or degree, by the [Sentencing] Commission.'").

In *Restrepo*, the district court had relied on three collateral consequences of Restrepo's citizenship status in departing from the then-mandatory Guidelines range: (1) Restrepo would be deported, (2) his sentence might be more severe due to his ineligibility for 18 U.S.C. § 3624(c) benefits or the option to serve his sentence in a minimum security prison and (3) he might be detained after his release pending deportation. 999 F.2d at 642-43. The Second Circuit reversed, holding that the circumstances presented were not "extraordinary in nature or degree." *Id*. at 644. The court rejected arguments based on Restrepo's lack of eligibility for incarceration in certain less restrictive settings, saying that the "unavailability of preferred conditions of confinement" and the other conditions presented did not "justif[y] the departure." *Id*. In *United*

*States v. Adubofour*, decided the same day, the defendant requested a departure because (1) his conviction would result in deportation, (2) he and his U.S. citizen fiancée would then be separated and (3) he was ineligible to serve any of his sentence at a halfway house. 999 F.2d 639, 640 (2d Cir. 1993). The court reversed for resentencing consistent with *Restrepo*, holding that "[a] *fortiori*, Adubofour's less compelling personal circumstances" than Restrepo's "are insufficient to warrant such a departure." *Id*.

### b. Petitioner's Arguments

The collateral consequences presented in the Petition are ineligibility for benefits under (1) 18 U.S.C. § 3624(c), (2) the CARES Act of 2020, (3) the First Step Act of 2018 and (4) RDAP, as well as (5) the likelihood that Petitioner's sentence would be longer or harsher due to the Trump Administration's policy of contracting with private prisons to house incarcerated non-citizens. Under *Restrepo* and *Adubofour*, these would have been insufficient to warrant a departure. "If there is a defect in" those policies affecting deportable non-citizens, "the appropriate way to remedy that defect would be pursuit of an action that challenges such a policy head-on, not the ad hoc granting of departures that have the effect of creating the very type of disparity in sentencing that the adoption of the Guidelines was intended to eliminate." *Restrepo*, 999 F.2d at 646.

Section 3624(c) directs the Bureau of Prisons ("BOP"), "to the extent practicable," to "ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community," such as a community correctional facility or home confinement. 18 U.S.C. § 3624(c)(1), (2). The fact that a defendant would likely or certainly not receive benefits under 18 U.S.C. § 3624(c) was

explicitly rejected as an "extraordinary" circumstance warranting downward departure from the Guidelines in *Restrepo*. *Restrepo*, 999 F.2d at 645. In *Restrepo*, the Court reasoned that the BOP is required to provide benefits only "to the extent practicable," meaning that benefits are not guaranteed to anyone, regardless of citizenship status. *Id.* "More importantly," the court said, deportable non-citizens generally are not released into the community upon their release, but rather are released to the custody of the Attorney General pending deportation. *Id.*

The CARES Act of 2020, passed during the COVID-19 pandemic, allowed the BOP to extend the amount of time an incarcerated person can be placed in home confinement or in a community correctional facility (halfway house) at the end of a sentence under 18 U.S.C. § 3624(c). CARES Act of 2020, Pub. L. No. 116-136, § 12003(b)(2), 134 Stat. 281. The CARES Act changed the benefits available under § 3624(c) in degree, not in kind. Such benefits are not mandatory even for citizens who are incarcerated people, and the *Restrepo* court's reasoning applies equally. *See id.* Therefore, under *Restrepo*, ineligibility for CARES Act benefits also does not qualify as an "extraordinary" circumstance.

The First Step Act of 2018 is also related to § 3624 as it allows an incarcerated person to earn "time credits" by completing evidence-based recidivism reduction programming or activities, which can be applied toward serving part of a sentence in home confinement, a halfway house or supervised release. First Step Act of 2018, PL 115-391, 132 Stat. 5194, codified at 18 U.S.C. § 3632(d)(4). Time credits can be reduced as a penalty for incarcerated individuals violating rules of the prison or of the programs in which the credits are earned. § 3632(e). Deportable non-citizens are expressly precluded from eligibility under the First Step Act. § 3632(d)(4)(E). In *Restrepo*, the court said, "Had Congress so stated," that deportable non-citizens are precluded from eligibility for § 3624(c), "a court's disapproval of that policy

9

choice would not be an appropriate basis for a departure from the Guidelines." 999 F.2d at 645. The First Step Act also excludes dozens of other categories of incarcerated people unconnected to deportability, so that ineligibility is not an "extraordinary" consequence of Petitioner's immigration status. § 3632(d)(4)(D). Ineligibility for First Step Act benefits is insufficient to warrant a departure from the Guidelines under *Restrepo*.

RDAP is a voluntary substance-abuse rehabilitation program. 28 C.F.R. § 550.53 (2016). Incarcerated individuals who complete RDAP may be eligible for consideration for community-based treatment programs, transfer to lower-security prisons, preferred living quarters or other incentives. 28 C.F.R. § 550.54. The authority to implement RDAP derives from 18 U.S.C. § 3621, which instructs the BOP to create substance-abuse treatment programs. § 3621(e)(1). The statute allows but does not require the BOP to offer incentives to complete the program, including "[l]ocal institution incentive such as preferred living quarters," consideration for various other transfers to preferred confinement settings and early release, if the incarcerated person meets certain eligibility requirements. § 3621(e)(2)(B); 28 C.F.R. § 550.54. As an initial matter, Petitioner is ineligible for early release under RDAP independent of his immigration status. *See* 28 C.F.R. § 550.55(b)(5)(ii), (6) (precluding "[i]nmates who have a current felony conviction for . . . [a]n offense that involved the carrying, possession or use of a firearm" or "who have been convicted of an attempt, conspiracy, or solicitation to commit" the same). Even if Petitioner were eligible for RDAP incentives, "the unavailability of preferred conditions of confinement," that could be obtained via RDAP does not justify a departure. *Restrepo*, 999 F.2d at 644. For all of those reasons, ineligibility for RDAP incentives is not an extraordinary circumstance warranting a departure.

Petitioner asserts that his sentence is likely to be particularly severe because of the Trump Administration's policies of reopening private prisons and segregating them based on non-citizen status. This claim is partially based on poor conditions at North Lake, a private prison primarily housing non-citizens, but the Petition also argues that private prisons generally do not offer the same opportunities that public facilities offer. Again, "the unavailability of preferred conditions of confinement," such as a public prison, does not warrant a departure. *Restrepo*, 999 F.2d at 644. U.S. citizens also can be sent to private prisons, and Petitioner has not explained how conditions are worse for non-citizens. As the *Smith* court acknowledged, assignment decisions by the BOP involve an "almost illimitable" range of factors, so "it may be hard for a sentencing court to say whether the fortuity of being a deportable alien is likely to have any independent effect" on conditions of confinement, 27 F.3d at 655, because even "if it were a steadfast policy of the Bureau to" assign non-citizens to private prisons with more severe conditions, the court in *Restrepo* said that it "would consider that policy an inappropriate basis for departure," 999 F.2d at 645. Taking Petitioner's assertions about the policies and conditions at issue as true, this circumstance would not qualify as "extraordinary."

Finally, while Petitioner invokes the Equal Protection Clause, it is unclear on what basis Petitioner argues that general, systemic racism in the criminal justice system affected his sentence. To the extent Petitioner is referring to the policy choices discussed above that disadvantage non-citizens, the argument is unpersuasive for all the foregoing reasons. Petitioner has not identified any other aspect of the Guidelines that he challenges as discriminatory, nor any other way in which the BOP exercises its discretion to disadvantage non-citizens or people of color. The Petition thus provides no other grounds upon which to find sufficiently extraordinary circumstances to warrant departure. Because the Petition's arguments in favor of a departure are

unpersuasive, Petitioner's counsel did not render ineffective assistance by failing to raise them, under either prong of *Strickland*.

### 2. Variance

At the time *Restrepo* and *Smith* were decided, the Guidelines were mandatory, and sentences outside of those ranges were imposed based on departures only. *See Smith*, 27 F.3d 649; *Restrepo*, 999 F.2d 640. After *United States v. Booker*, 543 U.S. 220, 221 (2005), courts can now apply discretionary variances outside the Guidelines framework based on the factors enumerated in 18 U.S.C. § 3553(a). *See, e.g.*, *United States v. Sealed Defendant One*, 49 F.4th 690, 697 (2d Cir. 2022). Under § 3553(a), a sentencing judge is required to consider the following factors when deciding whether a variance should be applied:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed [including offense seriousness.] . . . (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established . . . (5) any pertinent policy statement . . . (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

Petitioner's counsel was not deficient for failing to investigate and request an additional variance based on collateral consequences of non-citizen status. At the sentencing hearing, Petitioner's counsel requested a significant variance, 151 months lower than the Guidelines minimum. To support that request, Petitioner's counsel argued that the Court should consider many mitigating factors and presented significant supporting evidence. The record shows that those factors were considered when deciding on a sentence that reflected a ninety-one-month variance. Petitioner's counsel's zealous advocacy for Petitioner at sentencing also was noted for the record.

It was not unreasonable for Petitioner's counsel to focus on mitigating factors other than those Petitioner now urges. As an initial matter, there is some persuasive precedent holding that the arguments Petitioner raises in this motion are unlikely to succeed. *Perez-Gallegos v. United States*, No. 4 Crim. 1274, 2008 WL 3247260, at *4 (S.D.N.Y. Aug. 7, 2008) ("This Court has frequently rejected claims of this sort, because accepting them would mean that aliens would systematically receive shorter sentences than citizens for identical crimes."). Even if these arguments retain some viability, they are not particularly compelling. As discussed above, Petitioner would not necessarily have been entitled to these programs or their benefits even if he were a citizen. Petitioner's arguments that he would have received certain benefits but for his citizenship status are all contingent on future events, including the favorable exercise of discretion by the BOP and Petitioner's own actions in actually completing the programs. Adopting Petitioner's argument would also require second-guessing policy judgments, made by Congress and by the executive branch, to treat non-citizens differently in some respects. To the extent those policies are legally or constitutionally defective in some way, the Second Circuit's guidance from *Restrepo* applies, in this instance, equally to variances: "[T]he appropriate way to remedy that defect would be pursuit of an action that challenges such a policy head-on, not the ad hoc granting of [variances] that have the effect of creating the very type of disparity in sentencing that [§ 3553(a)(6)] was intended to eliminate." 999 F.3d at 646.

**B. Extradition Order**

The Petition argues that the Government should have prosecuted Petitioner only for conduct after the beginning of 2014, pursuant to the Honduras extradition order, and that defense counsel was ineffective in advising Petitioner to accept a guilty plea despite that discrepancy. The Petition also says the fact that the Court considered an additional nine years of conduct at

13

sentencing "is the true impact of defense counsel's ineffectiveness, but as a remedy, all [Petitioner] seeks is a two-level downward variance to compensate for the consequences of his deportable alien status." Thus, the Petition could be construed as waiving any claim for relief independent of the grounds addressed above. Construing the Petition liberally to raise the strongest arguments it suggests, it could be read to argue that Petitioner's counsel should have (1) raised this argument prior to Petitioner's guilty plea in an effort to dismiss or limit the scope of the charges, (2) raised this argument at sentencing to limit the scope of conduct considered at that stage or (3) not advised Petitioner to plead guilty in spite of this issue. These arguments are unavailing.

To the extent that the Petition argues that counsel was ineffective for failure to raise the extradition order prior to Petitioner's guilty plea, this argument fails because defense counsel did raise the issue in a discovery motion in 2018. The Opinion and Order addressing that motion rejected this argument on the merits. *United States v. Zelaya-Romero*, No. 15 Crim. 174, 2018 WL 1033235, at *1, *3-5 (S.D.N.Y. 2018).

To the extent that the Petition asserts that counsel was ineffective for failure to raise the extradition order at sentencing, that argument fails because it was a reasonable strategy for counsel not to raise at sentencing an issue that had already been raised and rejected by the trial court earlier in the case, when he instead could focus on the arguments that ultimately were successful here. *See Soto-Beltran v. United States*, 946 F. Supp. 2d 312, 318 (S.D.N.Y. 2013) (barring a habeas petition from raising issues that were previously raised at the sentencing submission); *Burger v. Kemp*, 483 U.S. 776, 784 (1987) (holding counsel was not ineffective in failing to raise an argument on appeal that was expressly rejected by the trial court); *accord Miller v. Superintendent of Shawangunk Corr. Facility*, No. 18 Civ. 1762, 2020 WL 4432096, at

\*1, \*15 (S.D.N.Y. 2020). Furthermore, there was no reasonable possibility that the outcome would have been different had the extradition argument been raised, because the court at sentencing may consider any relevant conduct, including conduct constituting crimes that were not charged. *United States v. Juwa*, 508 F.3d 694, 700 (2d Cir. 2007) ("A sentencing court is not limited to considering only evidence of the convicted offense; it may take into account other relevant conduct . . . and even acquitted conduct."); *see also* U.S.S.G. § 1B1.3, cmt. background ("Conduct that is not formally charged or is not an element of the offense of conviction may enter into the determination of the applicable guideline sentencing range."). Even if the charges had been limited to 2014, the judge would have been entitled to consider the entire range of the wrongful conduct when sentencing.

The Petition asserts that counsel was ineffective for advising Petitioner to plead guilty because the charges included crimes over the course of ten years, 2004-2014, instead of just one year, 2014. That argument fails because Petitioner does not allege nor provide any evidence that the plea was made involuntarily or unintelligently. *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) ("The longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'"). Defense counsel discussing plea offers with defendants must "communicate to the defendant the terms of the plea offer," and "inform the defendant of the strengths and weaknesses of the case against him, as well as the alternative sentences to which he will most likely be exposed." *Rensing v. United States*, No. 19 Civ. 5674, 2021 WL 1326909, at \*1, \*12 (S.D.N.Y. Apr. 8, 2021) (citing *Purdy v. United States*, 208 F.3d 41, 45 (2d Cir. 2000)). Petitioner was aware that his attorney had raised the issue of the extradition order and that the judge had rejected it. Petitioner has not alleged that his attorney concealed any information

about the plea, failed to inform Petitioner about potential alternatives or coerced Petitioner into a plea. Defense counsel was not unreasonable in advising Petitioner to plead guilty. When reviewing counsel's advice to a defendant to plead guilty, the question is not whether the counsel's advice was "right or wrong," but whether "that advice was within the range of competence demanded of attorneys in criminal cases." *McMann v. Richardson*, 397 U.S. 759, 771 (1970). Petitioner was facing multiple charges with a combined maximum term of imprisonment of sixty years. It was not outside the "range of competence" for defense counsel to advise Petitioner to accept a plea agreement that carried a maximum term of imprisonment of less than twenty-five years (293 months).

The arguments that defense counsel was ineffective in failing to raise the extradition argument at any time and in advising Petitioner to plead guilty are rejected.

## IV.  CONCLUSION

For the foregoing reasons, the Petition is denied, and the motion for an evidentiary hearing is denied.

As Petitioner has not made a substantial showing of the denial of a constitutional right, a Certificate of Appealability will not be issued. *See* 28 U.S.C. § 2253(c)(2); *Lucidore v. N.Y. State Div. of Parole*, 209 F.3d 107, 111-12 (2d Cir. 2000). The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this judgment on the merits would not be taken in good faith. *See Coppedge v. United States*, 369 U.S. 438, 445 (1962) ("We consider a defendant's good faith . . . demonstrated when he seeks appellate review of any issue not frivolous.").

The Clerk of Court is respectfully directed (1) in the criminal case, 15 Crim. 174-2, to close the motion at Dkt. No. 550 and (2) in the civil case, 22 Civ. 1853, to close the motion at Dkt. No. 16, enter judgment in favor of Respondent and close the case.

Dated: April 19, 2023
      New York, New York

                                              **LORNA G. SCHOFIELD**
                                              **UNITED STATES DISTRICT JUDGE**